UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


HARVEY P. SHORT,

        Plaintiff,

v.                                    Civil Action No. 2:07-00531

J. D. WALLS, II, OFFICER JASON
HALL, OFFICER LINDSAY DONAHOE,
OFFICER JOHN DOE, SOUTH CENTRAL
REGIONAL JAIL, WYETTA FREDERICKS,
Director, JOHN McKAY, Jail
Administrator, LIEUTENANT RICK
ROGERS, and CHAD CARDINAL,

        Defendants.


MEMORANDUM OPINION AND ORDER


        This Section 1983 action was previously referred to

Mary E. Stanley, United States Magistrate Judge, who submitted

her Proposed Findings and Recommendation ("PF&R") pursuant to the

provisions of 28 U.S.C. § 636(b)(1)(B) on September 30, 2008.


        The magistrate judge recommends that the court order

that:

    1.    The South Central Regional Jail be dismissed with

          prejudice on the ground that it is simply a building,

          which is not a suable entity;

    2.    The defendants' motion for summary judgment be granted

          to the limited extent that it seeks dismissal of the

plaintiff's claims against the defendants in their
official capacities on the ground that the defendants,
in their official capacities, are not "persons" under §
1983; and

3.    The defendants' motion for summary judgment be
otherwise denied.

The magistrate judge recommends that the motion be otherwise
denied on the finding that, with respect to the plaintiff's
claims of a July 28, 2007, altercation involving excessive force,
"the facts, taken in the light most favorable to Plaintiff,
without finding as to his credibility, show that the Officer
Defendants' conduct was an infliction of unnecessary and wanton
pain and suffering which violated Plaintiff's right, as a
pretrial detainee, not to be punished."

On October 6, 2008, the defendants objected to the
magistrate judge's recommendation that their motion for summary
judgment be otherwise denied.  The plaintiff responded on October
15, 2008.

As did the magistrate judge in her PF&R, the court
observes that defendants Walls, Hall, Donahoe and Doe (Officer
Jeffery A. George) are all correctional officers involved in the
altercation that occurred on July 28, 2007, and will be referred

2

to collectively as the "Officer Defendants."  Defendants
Fredericks, McKay, Rogers and Cardinal will be referred to
collectively as the "Supervisory Defendants."

## I. Background

### A. Plaintiff's Claim of Excessive Force Against the Officer Defendants

On July 28, 2007, the plaintiff was housed in the A-4
pod, the maximum security section, where he had been since April
19, 2007, on restraint restrictions.  (Short Aff. ¶ 4).
According to the plaintiff, when an inmate is on restraint
restrictions, the officers do not enter his cell until he has
been placed in handcuffs through a hole in the cell door, and
upon entering the cell, the officers also chain the inmate's legs
and waist.[1]  (Id.).  Additionally, three officers must be present
at all times while the inmate's door is open or the inmate is out
of his cell.  (Id.).

The July 28, 2007, altercation began with an argument

---

[1] The defendants dispute the plaintiff's description of
restraint restriction, explaining that the restraints are only
required when the inmate is being moved, and are not required
when the cell door is opened but the inmate is not being moved.

3

between the plaintiff and Officer Walls[2] concerning the
plaintiff's request that another inmate be permitted to use the
telephone on the plaintiff's behalf.  (Id. at ¶ 8; Short Dep.
112-14).  The plaintiff states in his deposition that he banged
on his cell door to attract Officer Walls's attention, and that
Officer Walls approached the plaintiff's cell, "hollering and
screaming and cursing," and stood outside the plaintiff's cell
looking through a glass window.  (Short Dep. 113, 119).  The
plaintiff told Officer Walls to get away from his door and the
plaintiff spat through a slit along the side of the door.  (Id.
at 119).  The plaintiff adamantly asserts that none of his
expectorate hit Officer Walls.  (Id.).  The plaintiff claims that
Officer Walls then threatened the plaintiff, saying "he wanted to
kick [the plaintiff's] ass," and radioed Officer George in the
tower to open cell 16, the plaintiff's cell.  (Id.; Short Aff. ¶
8).  Officer George declined to open the door at first,
presumably, the plaintiff says, because the plaintiff was not
restrained.  (Short Dep. 124-25).  Walls radioed Officer George

_____

[2] The plaintiff admits that he and Officer Walls had not had
problems in the past.  (Short Dep. 113).  Officer Walls had only
been working at South Central Regional Jail for approximately
four months at the time of the altercation. (Id. at 132).

4

again and said "I'm gonna give him something to sue about"[3] and
"I'll kick his ass."  (Id. at 125).  Walls also called for
assistance from other officers.  (Id.).

Walls returned to the door to the plaintiff's cell with
Officers Hall and Donahoe, as well as Officer Jones.  (Id. at
127).  At the time, the plaintiff was wearing only his underwear
and shower shoes.  (Id. at 128; Short Aff. ¶ 7).  When he saw the
officers approaching his cell, he retrieved a piece of broken
mirror from a shelf in his cell.  (Short Dep. 128).  He had kept
the piece of broken mirror wrapped in toilet paper on a shelf in
his cell next to other personal hygiene items.  (Id. at 122).  He
retrieved it when he saw the officers approaching because he
intended to show it to the officers to deter them from opening
his cell door and administering a beating, as he claims to have
seen them do to other inmates in the past, but he believes that
the officers did not see that he was holding anything before they
opened the door inasmuch as Officer Walls was standing in front
of the door.  (Id. at 130-31).  He did not unwrap the mirror from
the toilet paper.  (Id. at 128).

The plaintiff states that he saw Officer Walls waive

---

[3] The plaintiff has instituted other actions against
officials and officers at the South Central Regional Jail.

his hand, and then the cell door began to open.  (<u>Id.</u> at 130).

This surprised the plaintiff because he was not under restraints,

as he says he normally would be, before his cell door could be

opened.  (<u>Id.</u>).  Officer Walls entered the plaintiff's cell and

kicked him in the penis, testicles, and leg and hit him on the

head and back.  (<u>Id.</u> at 137, 141; Short Aff. ¶ 8).  The plaintiff

fell to the ground.  (Short Aff. ¶ 8).  Officers Walls and Hall

started hitting the plaintiff in the head and face with their

fists while he was down.  (<u>Id.</u>).  The plaintiff threw three or

four punches, and the officers backed away.  (<u>Id.</u>).  As they

backed out of the cell, Officer Walls stumbled, and Officers Hall

and Donahoe each grabbed one of Officer Wall's sides.  (<u>Id.</u>).

Officer Walls tried to reenter the cell, but Officers Hall and

Donahoe held him back.  (<u>Id.</u>; Short Dep. 137).  The plaintiff

removed the toilet paper from his piece of broken mirror and

showed it to the officers, saying "Now come in here."  (Short

Dep. 138).  Officer Hall radioed to Officer George to close the

cell door, and the door was shut.  (<u>Id.</u>).  The court notes that

the defendants offer a very different summarization of the

altercation between the Officer Defendants and the plaintiff.

    After the cell door was shut, Corporal Ames came to the

plaintiff's cell and convinced the plaintiff to surrender his

piece of broken mirror, which the plaintiff did in exchange for a set of clothes. (Id. at 141). Corporal Ames interviewed the plaintiff about the altercation and sent him to "medical" to be examined. (Id. at 142).

The plaintiff was examined by Nurse Losito. (Id.). Although the plaintiff states that he told Nurse Losito that he had been kicked in the penis and testicles, she examined him only for "apparent injuries." (Id.). Nurse Losito gave the plaintiff motrin for his pain. (Id. at 144). The plaintiff claims that he discharged blood from his penis.[4] (Id.). He did not tell the nurse about that because he "didn't feel comfortable with three officers present and [he's] showing [his] penis to a woman," so he "just took the pain." (Id. at 144-45). He admits that he never asked to be seen by any medical providers outside of the facility or to be taken to the hospital for an examination. (Id. at 145).

In his affidavit, the plaintiff states that as a result of the attack, his testicles swelled up, his penis discharged blood, he can no longer have a regular erection, and he has dizziness and vision loss. (Short Aff. ¶ 10). He states that he

---

[4] It is not clear from the plaintiff's deposition whether this happened before or after he saw Nurse Losito.

7

has "permanent injuries to his penis and testicles." (Id. at ¶
22).  He further states in his affidavit that there is no medical
record of his injuries because he "was told to get naked in front
of 3 male officers and 2 female nurses."  He notes that he
refused to do so and that he still suffers these injuries.

In addition to the plaintiff's affidavit, just quoted,
the record contains other evidence relating to the nature and
extent of the plaintiff's alleged injuries.  Nurse Losito's
notes, taken when she examined the plaintiff following the July
28, 2007, altercation, reflect that the plaintiff had an abrasion
on his left middle finger, but that the plaintiff denied any
other injuries.  (Short dep. exhibit 10).  An affidavit signed by
Nurse Losito confirms the statements made in her notes.  (Losito
aff. ¶¶ 5-8).

The plaintiff's medical records reflect that the day
after the incident, the plaintiff submitted a non-emergency sick
call request form on which he wrote that he was injured on his
right leg and right hand.  (Stuart aff. Exhibit 1).  He made no
complaints of dizziness, vision loss, or injury to his genitals
on this form.  (Id.).  On October 11, 2007, the plaintiff
underwent his annual physical examination.  (Id.).  During this
examination, it was determined that his vision and urinary system

8

were normal, and the plaintiff made no complaints about dizziness.  (Id.).  No mention on the record of this examination is made of genital injury.

Additionally, the plaintiff states in a response to the defendants' interrogatories that he has had erection problems since the attack and therefore cannot reproduce.  (Defs.' Interrogatories ¶ 15).  He also states that he has permanent head injury and vision loss, and that he is totally disabled as a result of the attack.  (Id.).

The plaintiff instituted this action on August 28, 2007.  As to the Officer Defendants, he claims that they conspired to attack and injure him and then carried out their plan on July 28, 2007.

B. Plaintiff's Claim of Deliberate Indifference Against the Supervisory Defendants

With respect to the Supervisory Defendants, the plaintiff claims that they were deliberately indifferent to the plaintiff's complaints that correctional officers were retaliating against him and threatening to injure him because he had filed lawsuits against the officers and had helped other inmates with their claims against the officers.  (Short aff. ¶ 5-

9

6).  He believes that the Supervisory Defendants allowed the
Officer Defendants to conspire, attack, and physically injure him
on July 28, 2007.  (Id.).  In support of his claim, he states in
his affidavit that "there is a history of physically beating
inmates on A-4 pod."  (Id. at ¶ 12).  For instance, he states
that on September 1, 2007, Officer Walls and four other officers
physically attacked another male inmate, and that "jail officers"
have threatened the plaintiff on several occasions in the past
because he filed grievances and lawsuits on behalf of inmates who
were beaten up by them on the A-4 pod.  (Id. at ¶¶ 11-13, 24).


                    II. Governing Standard


          A party is entitled to summary judgment "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those
necessary to establish the elements of a party's cause of action.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

          A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a

                              10

light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  Id.  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th

Cir. 1995), nor make determinations of credibility.  Sosebee v.
Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party
opposing the motion is entitled to have his or her version of the
facts accepted as true and, moreover, to have all internal
conflicts resolved in his or her favor.  Charbonnages de France
v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are
"drawn from the underlying facts . . . must be viewed in the
light most favorable to the party opposing the motion."  United
States v. Diebold, Inc., 369 U.S. 654, 655 (1962).


### III. Excessive Force


        The defendants, in their motion for summary judgment,
contended that the plaintiff's excessive force claim should be
dismissed because, according to the defendants, the Officer
Defendants were acting in self defense and, so, the plaintiff has
no evidence that their use of force was malicious or sadistic.
The defendants further contended that the plaintiff's alleged
injuries were nothing more than de minimus and do not suffice to
establish a constitutional violation.  The magistrate judge
disagreed on both points, noting that:

> Plaintiff was inside his cell and . . . entry of the
> cell by correctional officers was not necessary to
> maintain or restore discipline.  There is no suggestion

12

that Plaintiff was doing anything which placed
institutional security or his own safety in jeopardy.
Plaintiff has raised a claim that defendants Walls,
Hall and Donahoe entered his cell and kicked him in the
genitals maliciously and sadistically for the very
purpose of causing harm because Plaintiff spit on or
near Walls and because Plaintiff filed lawsuits against
Lt. Rogers.

(PF&R 8-9).

The United States Supreme Court announced the standard

for determining whether the use of force against a pretrial

detainee, such as the plaintiff, violates the due process clause

of the Fourteenth Amendment in <u>Bell v. Wolfish</u>, 441 U.S. 520

(1979), holding that "the proper inquiry is whether those

conditions [of confinement] amount to punishment of the

detainee." <u>Bell</u>, 441 U.S. at 535.  Although the conditions of

confinement of pretrial detainees are evaluated under the

Fourteenth Amendment, rather than the Eighth, which protects the

rights of convicts, the analysis of a detainee's claim mirrors

that of a convict's claim.  And, so, federal courts have relied

on decisions construing the Eighth Amendment in evaluating

pretrial detainees' claims under the Fourteenth Amendment.

To succeed on a claim of excessive force, a plaintiff

must satisfy both a subjective and an objective requirement.

<u>Stanley v. Hejirika</u>, 134 F.3d 629, 634 (4th Cir. 1998).  Under

the subjective requirement, a plaintiff must show that the defendants:

> "inflicted unnecessary and wanton pain and suffering."
> Whitley v. Albers, 475 U.S. 312, 230, 106 S. Ct. 1078,
> 89 L. Ed.2d 251 (1986).  The proper inquiry is whether
> the force applied was "in a good faith effort to
> maintain or restore discipline or maliciously and
> sadistically for the very purpose of causing harm."
> Id. at 320-21, 106 S. Ct. 1078 (citing Johnson v.
> Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998).  The

Supreme Court weighs several factors in evaluating whether a

force was applied in a good faith effort to maintain or restore

discipline or, instead, was administered maliciously and

sadistically.  The Court has described its considerations as

follows:

> "such factors as the need for the application of force,
> the relationship between the need and the amount of
> force that was used, [and] the extent of injury
> inflicted," 481 F.2d, at 1033, are relevant to that
> ultimate determination.  See 546 F. Supp. at 733.  From
> such considerations inferences may be drawn as to
> whether the use of force could plausibly have been
> thought necessary, or instead evinced such wantonness
> with respect to the unjustified infliction of harm as
> is tantamount to a knowing willingness that it occur. .
> . .  But equally relevant are such factors as the
> extent of the threat to the safety of staff and
> inmates, as reasonably perceived by the responsible
> officials on the basis of the facts known to them, and
> any efforts made to temper the severity of a forceful
> response.

Whitley v. Albers, 475 U.S. 312, 321 (1986) (internal citations

omitted).

The plaintiff must also satisfy an objective requirement.  To do so, he must show that the "correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'"  <u>Stanley</u>, 134 F.3d at 634 (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)).  "In determining whether the objective component is satisfied, the factfinder must evaluate the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose."  <u>Id.</u>  Not every malevolent touch by an officer gives rise to a violation of a constitutional right.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition <u>de</u> <u>minimus</u> uses of physical force, provided the use of force is not of a sort 'repugnant to the conscience of mankind.'"  <u>Hudson</u>, 503 U.S. at 9-10.

In the context of an excessive force claim, contemporary standards of decency are always violated when a prison official maliciously and sadistically uses force to cause harm.  <u>Id.</u> at 9.  "This is true whether or not significant injury is evident."  <u>Id.</u>  In <u>Hudson v. McMillian</u>, the plaintiff contended that after he had an argument with Officer McMillian, McMillian and another officer placed him in handcuffs and

15

shackles and McMillian punched him in the mouth, eyes, chest, and stomach while the other officer held him in place and kicked and punched him from behind.  Hudson, 503 U.S. at 4.  As a result of this altercation, the plaintiff suffered only minor bruises and swelling of his face, mouth, and lip; a loosened tooth; and a cracked partial dental plate.  Id.  Despite the non-serious nature of the plaintiff's injuries, the United States Supreme Court nonetheless held that the use of excessive physical force against the plaintiff constituted cruel and unusual punishment in violation of the Eighth Amendment.  Id. at 12; see also Danley v. Allen, 540 F.3d 1298 (11th Cir. 2008) (applying the reasoning of Hudson in a case brought by a pretrial detainee and stating that "Pretrial detainees, who are not protected by the Eighth Amendment, can bring the same claims under the Fourteenth Amendment.").

The court agrees with the magistrate judge's finding that the plaintiff, through his affidavit, has raised sufficient questions of material fact about the way the altercation transpired to survive summary judgment.  As the magistrate judge pointed out in her PF&R, the plaintiff was in his cell with the door locked when the altercation began.  Although the plaintiff admits to yelling at Officer Walls, pounding on his cell door,

16

and spitting through a small opening in his cell door, there is no suggestion that he was doing anything that would threaten security or place the officers or other detainees at risk. Viewing the evidence in the light most favorable to the plaintiff, without finding as to his credibility, there was no need for the Defendant Officers to enter his cell, and the use of the force described by the plaintiff was excessive.  The court, accordingly, finds that the plaintiff has satisfied the subjective requirement of the excessive force standard.

The defendants object to the magistrate judge's findings with respect to the objective requirement, contending that the plaintiff's injuries were de minimus in nature and do not support a claim that a constitutional violation occurred. Specifically, the defendants note an absence of medical records to substantiate the plaintiff's alleged injuries.  The medical records supplied by the defendants conflict with the contents of the plaintiff's affidavit, wherein he describes his injuries as "permanent" and states that he can no longer have a regular erection and cannot reproduce.  As the magistrate judge noted, where there is competing evidence on an issue of material fact, as is the case here, summary judgment is not proper.  The court must neither resolve disputed facts nor weigh the evidence,

17

Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995),
nor make determinations of credibility.  Sosebee v. Murphy, 797
F.2d 179, 182 (4th Cir. 1986).  Rather, in this case, the
plaintiff is entitled to have his version of the facts accepted
as true and, moreover, to have all internal conflicts resolved in
his favor.  See Charbonnages de France v. Smith, 597 F.2d 406,
414 (4th Cir. 1979).

        The circumstances of this case, as portrayed by the
plaintiff, are comparable to those in Hudson.  In each case, the
altercation between the plaintiff and the officers began with an
argument.  In neither case did the plaintiff engage in riotous
behavior like that exhibited by plaintiffs in other cases in
which courts have found that the use of force was not excessive.
Compare Hudson, 503 U.S. 1; with Whitley, 475 U.S. 312 (no
excessive force found when officer shot the plaintiff in the leg
in the context of a major prison disturbance during which an
officer was taken hostage by the inmates); and Stanley, 134 F.3d
629 (no excessive force found when officers extracted an inmate
from his cell and forcefully held him against a wall and then on
the floor while steel handcuffs were replaced with flexible cuffs
in the context of a riot during which inmates started fires, set
off sprinklers, stopped up toilets, and threw objects out of

                              18

their cells).  Instead, the plaintiff here, as in <u>Hudson</u>, was
secured in his cell causing no threat to security when the
officers opened the plaintiff's cell doors and escalated the
verbal altercations to physical ones.  As the Supreme Court found
in <u>Hudson</u>, such circumstances suggesting that force was used
maliciously and sadistically to cause harm always violate
contemporary standards of decency.  So, even if the plaintiff's
injuries were minimal, as in <u>Hudson</u>, he will not fail under the
objective prong inasmuch as he has offered evidence suggesting
that the Officer Defendants acted maliciously and sadistically to
cause harm.


## IV. Deliberate Indifference


        The magistrate judge makes no finding regarding the
plaintiff's claim of deliberate indifference, except to observe
that the defendants' motion for summary judgment appears to be
focused on the plaintiff's claims against the Officer Defendants
as there is no discussion in the motion and supporting memorandum
of the alleged deliberate indifference claim.  The defendants
object to the PF&R on the ground that the magistrate judge failed
to address arguments made by the defendants in their reply
regarding deliberate indifference.

The court has reviewed the briefing considered by the magistrate judge and observes that the defendants did not request summary judgment with regard to the plaintiff's deliberate indifference claim in their motion or supporting memorandum.  The plaintiff, nonetheless, addressed his deliberate indifference claim in his response to the defendants' motion.  In three short paragraphs comprised of a total of seven sentences, the plaintiff states that he wrote letters and grievances to the Supervisory Defendants requesting "safety and protection and a transfer," and that the Supervisory Defendants failed to investigate his circumstances or take any action.  According to the plaintiff, the Supervisory Defendants are not entitled to summary judgment because they have failed to produce any affidavits or other evidence showing that they were not deliberately indifferent.

The defendants replied, addressing the deliberate indifference claim for the first time in their reply memorandum and contending that summary judgment is appropriate on this claim.  Specifically, the defendants presented the court with evidence tending to show that the plaintiff's grievances were investigated and that he was notified that his grievances were found to be without merit.  This evidence was not attached to the defendants' motion for summary judgment or memorandum in support.

It was presented for the first time in conjunction with the
defendants' reply.

The court generally does not consider arguments made
for the first time in a reply brief inasmuch as doing so would
deny the party opposing the motion an opportunity to respond.
See Ray v. Cooper, No. 2:07-cv-0389, 2008 WL 4279662, at *5 (S.D.
W. Va. Sept. 15, 2008); Affholder, Inc. v. N. Am. Drillers, Inc.,
No. 2:04-cv-0952, 2006 WL 3192537, at *16 n.15 (S.D. W. Va. Nov.
1, 2006).  Although the plaintiff discussed his deliberate
indifference claim in his response, he did so tersely and without
the benefit of knowing what the defendants' arguments would be.
Inasmuch as the plaintiff has not had a meaningful opportunity to
respond, the court declines to consider the defendants' arguments
on the deliberate indifference claim at this time, but will
afford the Supervisory Defendants a further opportunity to file a
motion for summary judgment and supporting memorandum on the
issue if they wish to do so.

V. Qualified Immunity

With respect to the Supervisory Defendants, the
magistrate judge makes no qualified immunity finding because the

21

Supervisory Defendants presented no argument in their motion for summary judgment that they were entitled to qualified immunity. Inasmuch as the Supervisory Defendants do not object, the court adopts the PF&R with respect to this issue.  The Supervisory Defendants may address qualified immunity when they move for summary judgment on the plaintiff's deliberate indifference claim if they choose to do so.

As to the Officer Defendants, the magistrate judge observed that their contention that they are entitled to qualified immunity is based on their assertion that they are entitled to summary judgment on the facts relating to the claimed use of excessive force.  She, accordingly, recommends that the court find that the Officer Defendants have failed to show that they are entitled to qualified immunity for the reasons set forth in the section on excessive force.  The Officer Defendants do not object to this recommendation.

Qualified immunity bars section 1983 actions against government officials in their individual capacity.  Brandon v. Holt, 469 U.S. 464, 472-73 (1985).  Because it is an immunity, and not merely a defense, it protects government officials not only from liability, but also from the burdens of trial and preparing for trial, so it must be addressed by the court at the

22

earliest possible stage of the litigation.  <u>Hunter v. Bryant</u>, 502
U.S. 224, 227 (1991); <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526
(1985).  "[I]t is effectively lost if a case is erroneously
permitted to go to trial."  <u>Mitchell</u>, 472 U.S. at 526.

The test for qualified immunity is a two-pronged
inquiry.  The court must determine (1) whether a constitutional
right has been violated on the facts alleged and (2) whether the
right was clearly established at the time such that it would be
clear to an objectively reasonable officer that his conduct
violated that right.[5]  <u>Saucier v. Katz</u>, 533 U.S. 194, 200-02
(2001).  A right is clearly established if "[t]he contours of the
right [are] sufficiently clear that a reasonable official would
understand that what he is doing violates that right."  <u>Id.</u> at
202.  "The relevant, dispositive inquiry in determining whether a
right is clearly established is whether it would be clear to a
reasonable officer that his conduct is unlawful in the situation
he confronted."  <u>Id.</u>  "If the law did not put the officer on
notice that his conduct would be clearly unlawful, summary

_____

[5] The Supreme Court has recently clarified that the prongs of
the qualified immunity test need not be addressed in a particular
order; courts may use discretion in deciding which of the two
prongs should be considered first in light of the circumstances
of the particular case at hand.  <u>Pearson v. Callahan</u>, -- U.S. --,
129 S. Ct. 808, 818 (2009).

judgment based on qualified immunity is appropriate."  <u>Id.</u>

In the motion for summary judgment, the Officer Defendants seek qualified immunity on the ground that the plaintiff, according to the defendants, has not produced any evidence that the Officer Defendants engaged in malicious or sadistic conduct or that his injuries were more than <u>de</u> <u>minimus</u>, and so no violation of a federal statutory or constitutional right has been established.  Addressing this argument, the magistrate judge noted that the plaintiff contends that the Officer Defendants entered the plaintiff's cell for the purpose of "teaching him a lesson."

The administration of a beating for purposes other than to restore or maintain prison security or the plaintiff's own safety violates clearly established law as of the time the plaintiff says the Officer Defendants unnecessarily entered his cell and administered the beating on which the plaintiff's excessive force claim is based.  <u>See</u>, <u>e.g.</u>, <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).  The evidence on that claim is sharply in dispute, as is, at this stage, the evidence on the claim of deliberate indifference against the Supervisory Defendants. Consequently, the court is unable to conclude at this time that the defendants are entitled to qualified immunity.

VI. Conclusion

The court concludes that the recommended disposition is correct.  Accordingly, it is ORDERED that:

1.   The magistrate judge's proposed findings and recommendation be, and they hereby are, adopted by the court;

2.   The South Central Regional Jail be, and it hereby is, dismissed with prejudice;

3.   The defendants' motion for summary judgment be, and it hereby is, granted to the limited extent that it seeks dismissal of the plaintiff's claims against the defendants in their official capacities only; and

4.   The defendants' motion for summary judgment be, and it hereby is, otherwise denied.

If the Supervisory Defendants wish to move for summary judgment on the plaintiff's deliberate indifference claim, they are directed to do so no later than April 17, 2009.  The plaintiff may respond by April 30, 2009, and the Supervisory Defendants may reply by May 7, 2009.

The Clerk is directed to forward copies of this written

25

opinion and order to the pro se plaintiff, all counsel of record, and the United States Magistrate Judge.

DATED:  March 31, 2009

John T. Copenhaver, Jr.
United States District Judge

26